UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KACEY KELLY and
ELIJAH KELLY

               Plaintiffs,

     v.                                                   Case No. 19-cv-01118-bhl

KIMBERLY R. GERSONDE,
BLAKE A. PEUSE,
ST. FRANCIS SCHOOL DISTRICT,
ROBERT G. BOKNEVITZ,
ST. FRANCIS SCHOOL BOARD,
CASEY M. BLOCHOWIAK, and
COMMUNITY INSURANCE CORPORATION,

               Defendants.

---

## DECISION AND ORDER ON
## MOTIONS FOR SUMMARY JUDGMENT

---

In the spring of 2017, Defendant Kimberly Gersonde, a recently hired part-time teacher's aide at St. Francis High School, engaged in an inappropriate sexual relationship with Kasey Kelly, a 17-year old student at the school. When rumors of the relationship surfaced, the school promptly investigated the matter and Gersonde quit, having been employed with the school for only two months. She was later convicted in state court on charges arising from her relationships with Kelly and another student at a different school. In this lawsuit, Kelly and his father, Elijah Kelly, seek to recover damages against Gersonde, various individuals and entities associated with the St. Francis School District, and the district's insurer, for alleged violations of Plaintiffs' federal civil rights and state law torts.

Defendants have filed three different summary judgment motions. Defendants Blake A. Peuse (the St. Francis School District Superintendent), Robert G. Boknevitz (the School Board President), Casey M. Blochowiak (the St. Francis High School Principal), the St. Francis School District, and the St. Francis School Board (collectively the School District Defendants) seek

summary judgment on all claims against them on grounds that (1) they are not liable for any alleged civil rights violations and (2) state law immunity precludes Plaintiffs' tort claims. Defendant Gersonde seeks partial summary judgment on Plaintiffs' federal civil rights claims against her on grounds she was not acting "under color of law" in her relationship with Kasey Kelly. Defendant Community Insurance Corporation seeks summary judgment on its duties to defend and indemnify Gersonde based on various policy defenses.

Because the record does not support Plaintiffs' efforts to assert federal civil rights violations (as opposed to potential state law tort claims), the Court will grant the School District Defendants' and Gersonde's motions for summary judgment. Having resolved all federal claims on which the Court's subject matter jurisdiction rests, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, including those related to insurance coverage, and dismiss the case.

## UNDISPUTED FACTS

Defendant Kimberly Gersonde is an adult resident of Milwaukee, Wisconsin. (Dkt. 67 at ¶7.) In March 2017, Gersonde applied for a part-time, entry-level supervisory aide position at St. Francis High School. (*Id.* ¶¶25-26.) A supervisory aide is responsible for supervising students in locker rooms, hallways, study halls, cafeterias, and after-school detentions. (Dkt. 65 at ¶2.)

As part of the hiring process, Gersonde completed an application through the Wisconsin Education Career Access Network (WECAN), an on-line recruitment and application network for teachers and other school employees. (Dkt. 67 at ¶27.) Gersonde failed to disclose in the application that she had previously worked for the Menomonee Falls School District. (*Id.* ¶28.) In fact, Gersonde had been employed by the Menomonee Falls School District in two different positions in 2016 but was fired for not cooperating with an internal investigation regarding an allegedly inappropriate relationship with a student. (*Id.* ¶14-19.) Gersonde admits she omitted her employment with the Menomonee Falls School District because she did not want the St. Francis School District to know about the circumstances of her discharge. (*Id.* ¶29.)

Before she was hired, Gersonde was interviewed by Principal Blochowiak and Associate Principal Mike Lewandowski. (Dkt. 67 at ¶¶4, 31, 34.) In the interview, Gersonde informed them that she had worked at the Menomonee Falls School District but did not disclose the circumstances surrounding her departure from that job. (*Id.* ¶¶38-39.) Blochowiak and Lewandowski appear not

to have thought the omission on Gersonde's application unusual because, they explain, it was not uncommon for applicants not to update their WECAN applications. (*Id.* ¶39.)

After the interview, Blochowiak followed up with Gersonde's references. (Dkt. 67 at ¶46.) She received a positive reference for Gersonde from one former employer and, after speaking with different people, no one raised any concerns regarding Gersonde. (*Id.* ¶¶43-45.) Blochowiak also affirmatively contacted the Menomonee Falls School District. (*Id.* ¶47.) A receptionist referred Blochowiak to another person, with whom Blochowiak left a voicemail, only to then be referred to the district's human resources department. (*Id.* ¶¶48-49.) Blochowiak was not concerned about being referred to human resources, concluding from her communications with several individual in Menomonee Falls that the person who made the reference had not been Gersonde's direct supervisor. (*Id.* ¶51.) Blochowiak appears never to have made contact with Menomonee Falls human resources personnel.

Blochowiak also received a positive reference regarding Gersonde from Superintendent Peuse. (Dkt. 67 at ¶53.) Peuse knew Gersonde from his time as Principal at Brown Deer Middle School when Gersonde was a student at the school. (*Id.* at ¶¶54-55.) Based on his general interactions with her as a student, he felt he knew her to be a good person and felt comfortable acting as her reference for the entry-level supervisory aide position. (*Id.* ¶¶55-56.) Peuse was unaware of Gersonde's prior employment with Menomonee Falls. (*Id.* ¶61.)

Blochowiak obtained Gersonde's birth date in order to run a criminal background check. (*Id.* ¶68.) Blochowiak was not informed of any concerns stemming from the criminal background check on Gersonde. (*Id.* ¶69.)

At no point during the reference checks or interviews did St. Francis School District representatives uncover anything about Gersonde's past that caused concern. (Dkt. 67 at ¶73.) Based on the information she had at the time, Blochowiak recommended to Peuse that Gersonde be hired for the supervisory aide position. (*Id.* ¶¶74-75.) Peuse reviewed and approved Blochowiak's recommendation, subject to School Board approval. (*Id.* ¶76.) At the time, no one in the hiring process was aware that Gersonde had a history of inappropriate sexual conduct with a minor or otherwise posed a risk of sexually abusing students. (*Id.* ¶¶102-03.)

Gersonde was hired as a part-time supervisory aide in March of 2017. (Dkt. 65 at ¶1.) She worked as a hall monitor, library aide, and lunchroom and study hall supervisor. (*Id.* ¶3.) All of Gersonde's job duties were to be conducted at St. Francis High School. (*Id.* ¶5.)

Shortly after starting, Gersonde, then age 23, met Kacey Kelly, then age 17, at a study hall. (Dkt. 65 at ¶7, 9.) Their casual conversations led to email exchanges and then to flirtatious communications over direct messages on Twitter, and they took efforts to keep their correspondence secret. (*Id.* ¶¶9-12.) Kelly invited Gersonde to attend events off-campus, including a track meet and a college football tryout camp. (*Id.* ¶¶15-17.) At the football camp, Kelly met with Gersonde in the parking lot and arranged to meet her that evening. (*Id.* ¶18.) He then lied to his father about spending the night at a friend's house and instead spent the night at Gersonde's apartment. (*Id.* ¶¶20.) Gersonde and Kelly had inappropriate sexual relations that night and on at least one other occasion. (*Id.* ¶¶21, 25.) Neither of the occasions involved physical coercion. (*Id.* ¶27.) Gersonde and Kelly never had any sexual contact on the St. Francis School District Campus. (Dkt. 67 at ¶96.)

About two months after Gersonde was hired, Blochowiak became aware of rumors that Gersonde might be having an inappropriate relationship with a student. (*Id.* ¶¶77.) Blochowiak began an immediate investigation that included interviews of students about the rumors. (*Id.* ¶¶79-81.) Vice Principal Lewandowski interviewed Kelly twice and both times Kelly denied the rumors, claiming he was not even communicating with Gersonde. (*Id.* ¶¶83-85.) After the second interview, Lewandowski asked Kelly's father to speak with him about the rumors. (*Id.* ¶86.) After first denying the affair, Kelly ultimately admitted to his father that the rumors were true. (*Id.* ¶87.) District representatives also interviewed Gersonde, who similarly denied the rumors in two separate interviews. (*Id.* ¶¶88-89.) The day after her second interview, Gersonde resigned. (*Id.* ¶90.)

On the day Gersonde resigned, School District representatives were contacted by the Menomonee Falls Police Department and learned that Gersonde had had sexual contact with Kelly. (Dkt. 67 at ¶91.) It was only after Gersonde resigned that Blochowiak and Peuse learned that Gersonde had allegedly had sexual contact with a minor at the Menomonee Falls School District. (*Id.* ¶¶92-95.)

## SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*,

477 U.S. at 248. A dispute over "a material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

### I. Plaintiffs' Section 1983 Claims Against the School District Defendants Fail as a Matter of Law.

In Counts II-V of their Amended Complaint, Plaintiffs assert four federal civil rights claims against the School District Defendants.[1] While Plaintiffs invoke 42 U.S.C. §1983, they struggle to transform what are primarily state law negligent hiring and supervision claims into federal civil rights violations. In Counts II and III, Plaintiffs assert that the School District Defendants' failure to enact hiring and supervision policies sufficient to prevent Gersonde's relationship with Kelly "constituted deliberate indifference on their part to" Kelly's "constitutional rights." (Dkt. 32 at ¶¶47, 51.) They contend in Count II that this failure to enact a policy violated Kelly's 14th Amendment due process rights, (*Id.* ¶48), but they are silent as to the particular "constitutional rights" they believe the Defendants violated in Count III. (*Id.* ¶¶51-52.)

Counts IV and V appear to parallel Counts II and III and are based on allegations that the School District Defendants failed "to investigate" Gersonde before hiring her, and "to supervise" her adequately after she was hired. (*Id.* ¶¶54-55, 58-59.) They differ from the earlier counts primarily in their omission of any mention of Defendants' failure to enact policies. Count IV, like Count II, invokes Kelly's 14th Amendment due process rights (*Id.* ¶56), while Count V, like Count

---

[1] They also assert one claim (Count VI) against the School District Defendants for state law negligence.

III, is silent on any particular constitutional provision. (*Id.* ¶¶59-60.) The Court assumes all four counts are premised on substantive due process theories.

Plaintiffs also struggle to articulate clearly their legal theories against each of the various School District Defendants. Plaintiffs generically assert all four counts against all of the School District Defendants, including both individual and entity defendants, without differentiation. They purport to sue Superintendent Peuse in both his official and individual capacity, School Board President Boknevitz solely in his official capacity, and Principal Blochowiak solely in her "individual capacity." (Dkt. 32 at ¶¶7, 9, 11.) They name two entities, the St. Francis School District and the St. Francis School Board, without explaining why either is an appropriate defendant. (*Id.* ¶¶8, 10.) This "throw everything at the wall and see what sticks" strategy unhelpfully ignores key principles of section 1983 liability.[2]

The difference between suing an individual in his or her official capacity and his or her individual capacity is significant. "Personal-capacity suits seek to impose liability upon a governmental official for actions he takes under color of state law. … Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. *Id.* On the other hand, an official-capacity suit is appropriate when a governmental actor is executing or implementing the official policy or custom of a government entity. *Id.* Plaintiffs' broad-brush approach disregards these important distinctions.

### A. Plaintiff's Personal-Capacity Claims against Peuse and Blochowiak Fail as a Matter of Law.

The School District Defendants argue that summary judgment is appropriate on Plaintiffs' personal-capacity claims against Peuse and Blochowiak because there is no evidence either Defendant personally participated in any unconstitutional activity against Kelly. (Dkt. 63 at 18-19.) Plaintiffs concede that neither Peuse nor Blochowiak had any knowledge of Gersonde's relationship with Kelly until after it occurred. No one from the District involved with the hiring

---

[2] Plaintiffs' overbroad efforts also include their attempt to claim that Defendants violated Elijah Kelly's rights. The Court is unaware of any Supreme Court or Seventh Circuit decision holding that section 1983 allows a parent to assert claims based on the alleged violation of a child's constitutional rights. Plaintiffs cite no law in support of such a claim. Because Plaintiffs' federal law claims fail for other reasons, the Court need not dwell on this issue.

process was aware that Gersonde had a history of inappropriate sexual conduct with a minor or otherwise posed a risk of sexually abusing students. (Dkt. 67 at ¶¶102-03.) Nor did anyone from the School District learn of Gersonde's misbehavior until her employment ended. It was only after Gersonde resigned that anyone associated with the School District learned Gersonde had engaged in sexual contact with Kelly. (*Id.* ¶91.)

The lack of personal involvement in Gersonde's misconduct precludes Plaintiffs' efforts to hold Peuse and Blochowiak at fault under a federal civil rights theory. It has long been established that liability under section 1983 attaches only to individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). Because neither Peuse nor Blochowiak participated in the inappropriate conduct, they cannot be held liable in their personal capacities for a civil rights violation.

Nor can Plaintiffs rely on the doctrine of *respondeat superior* to hold Peuse and Blochowiak responsible. *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011) ("[T]he Supreme Court has held that municipalities are not liable for the torts of their employees under the strict-liability doctrine of *respondeat superior*, as private employers are."); *see Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (noting an official sued under section 1983 "cannot be personally liable under a theory of *respondeat superior*" because personal responsibility is required). While Peuse and Blochowiak may have had some role in supervising Gersonde's conduct, a supervisor can only be held liable for a subordinate's misconduct if the supervisor directs or consents to the misconduct. *Gentry*, 65 F.3d at 561 (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). To hold a supervisor liable under section 1983 for an employee's sexual misconduct, a plaintiff must show the supervisor "knew about [the employee's] sexual misconduct and facilitated, approved, condoned, or turned a blind eye to it." *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Because it is undisputed that neither Peuse nor Blochowiak had knowledge of Gersonde's misconduct, they cannot be liable for merely failing to detect and prevent her actions. Accordingly, Peuse and Blochowiak are entitled to summary judgment on Plaintiffs' personal-capacity claims against them.

### B. The School District Defendants Are Also Entitled to Summary Judgment on Plaintiff's Remaining Claims.

Plaintiffs also assert claims against Peuse and Boknevitz in their official capacities. It is well established that when municipal employees are sued in their official capacities under section 1983, federal courts must treat the claims as though they are being asserted against the municipality that employs them, rather than against the employees themselves. *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)) ("'Although state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'") Given Plaintiffs' claims against the School Board and School District, the official capacity claims against Peuse and Boknevitz are redundant. The Court will analyze the claims against all four Defendants together.

Section 1983 claims against a municipality or municipal employees acting in their official capacities are governed by *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *Monell* limits the scope of civil rights claims against a municipality to claims arising from a municipal custom or policy. Central to this determination "is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

*Monell* recognizes three primary ways in which one might prove that the municipality itself inflicted the harm. First, the plaintiff may show that the alleged unconstitutional conduct implements or executes an official policy adopted by the entity's officers. *Monell*, 436 U.S. at 690; *see also Glisson*, 849 F.3d at 379 (quoting *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff may show that the unconstitutional action was done pursuant to a custom—even one that is not formally codified. *Monell*, 436 U.S. at 690-91. Third, the plaintiff may prove that an actor with final decision-making authority within the entity adopted the relevant policy or custom. *Id.* at 694; *see also Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011).

Plaintiffs' claims against the School District and School Board, and the official-capacity claims against Peuse and Boknevitz, fail because the record is devoid of any suggestion that Gersonde's inappropriate sexual relationship was undertaken pursuant to any School District or School Board policy, custom or practice, as required by *Monell*. There was no formal policy under which Gersonde entered into a sexual relationship with Kelly. Nor have Plaintiffs pointed to any

evidence of an informal custom of allowing or encouraging such relationships. And they have failed to produce any evidence that a person with final decision-making authority for the District approved of Gersonde's action. Without such evidence, there can be no municipal liability under *Monell* and no liability for employees acting in their official capacities.

Plaintiffs seek to avoid the *Monell* limitations by basing their claims on the *absence* of a School District policy, which they claim caused the violations of Kelly's constitutional rights. But this stands *Monell* on its head. *Monell* requires that the alleged constitutional violation take place pursuant to a municipal policy, custom or practice—not the absence of such a policy, custom or practice. Less than three years ago, the Seventh Circuit rejected a similar attempt to hold a municipality liable under section 1983 based on its failure to enact a policy to prevent an employee's sexual misconduct. *See Doe v. Vigo County*, 905 F.3d 1038, 1044-46 (7th Cir. 2018). In *Vigo County*, the Seventh Circuit acknowledged that while *Monell* does not require proof of a formal policy, it did require the plaintiff to establish the existence of a "widespread and well-settled" municipal custom and, at a minimum, local policymakers' deliberate indifference "to the known or obvious consequences of their inaction with respect to that custom." *Id*. at 1045 (quoting *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). Based on these requirements, the Seventh Circuit affirmed the entry of summary judgment for a municipality even where the record showed the misbehaving employee had a known history of sexual misconduct and there were a number of similar incidents by County employees preceding the plaintiff's injuries. *Vigo County*, 905 F.3d. at 1045-46.

Plaintiffs here have no evidence of any widespread and well-settled policy of encouraging or refusing to stop sexual misconduct by school district employees. The only evidence of a similar incident in the St. Francis School District is Plaintiffs' citation to a 2012 Seventh Circuit decision involving a Title IX claim against the same school district. But adding that incident to Gersonde's misconduct totals only two incidents, taking place years apart. This is insufficient to establish a well-settled custom; it is far less compelling than what the Seventh Circuit found insufficient in *Vigo County*. There is also no evidence, as discussed in detail below, that any policymaker from the School District was deliberately indifferent to the known or obvious consequences of their failure to enact the policy Plaintiffs demand.

In their response brief, Plaintiffs invoke *Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397 (1997), to suggest that they need not show actual knowledge or bad intent to maintain

their *Monell* claims. (Dkt. 72 at 15.) Plaintiffs greatly overstate the Supreme Court's holding. In *Bryan County*, the Supreme Court did not abrogate the long-standing principle that a section 1983 claim against a municipal entity under *Monell* requires proof of knowledge and intent by a policymaker. While the Court acknowledged that the requisite culpability could be shown by state actors' deliberate indifference, it took pains to emphasize that this was simply another way of showing knowledge and intent, emphasizing that federal courts must adhere to "rigorous standards of culpability and causation," including in constitutional challenges to municipal hiring decisions. *Bryan County*, 520 U.S. at 405. It explained, "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Id*. at 415 (emphasis in original). And the Court confirmed that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. at 404. This was not to be construed as a lessening of the standard for challenges to a municipality's hiring or supervision practices; a municipality that acts with "deliberate indifference" to the "known and obvious" consequences of conduct is culpable, but a "showing of simple or even heightened negligence will not suffice." *Id*. at 406-07.

Plaintiffs' attempt to transform negligent hiring claims into constitutional violations fail because the record lacks evidence sufficient for a reasonable jury to conclude that the School District or School Board, or Peuse or Boknevitz acting in their official capacities, were deliberately indifferent to a known and obvious danger in hiring Gersonde. (Counts II and IV.) Gersonde was hired for a part-time entry-level teacher's aide position, in which she largely served as a cafeteria supervisor and hall monitor. The School District Defendants conducted an interview process and called her references before hiring her. Indeed, Plaintiffs concede that no one from the District involved with the hiring process was aware that Gersonde had a history of inappropriate sexual conduct with a minor or otherwise posed a risk of sexually abusing students. (Dkt. 67 at ¶¶102-03.) It was only after Gersonde resigned that anyone from the School District learned that Gersonde had had sexual contact with Kelly. (*Id.* ¶91.) It would be a stretch for a jury to conclude that the School District Defendants were negligent (an issue this Court need not decide). But the record is plainly insufficient to support a finding that the School District Defendants were deliberately indifferent to Plaintiffs' constitutional rights in hiring Gersonde. Section 1983 simply does not federalize what is at best a state-law negligent hiring claim.

Plaintiffs fare no better trying to cast their negligent supervision claims as constitutional violations. (Counts III and V). Gersonde was employed by the School District for a very short time, only two months. A few weeks into her tenure, she met Kelly. While their communications turned flirtatious, Gersonde and Kelly took steps to keep their emails and text messages secret and there is no evidence anyone from the School District knew or should have known about their flirtation. When the relationship turned sexual, that conduct took place away from the school and, again, there is no evidence anyone from the School District knew or should have known about that activity. When rumors of inappropriate behavior came to their attention, School District representatives immediately began an investigation that included interviews of students, and of both Gersonde and Kelly. Gersonde and Kelly initially denied any inappropriate conduct. But the School District did not just accept those denials. Representatives interviewed both Gersonde and Kelly twice and followed up with Kelly's father, who, after continued denials, was finally able to get his son to confess. Gersonde's employment ended after her second interview. And it is undisputed that no one from the school district was aware of the sexual misconduct until after Gersonde quit. This record cannot support a deliberate indifference claim related to the School District Defendants' oversight of Gersonde. Accordingly, summary judgment is appropriate on Counts III and V of the Amended Complaint.

## II. Plaintiffs' Efforts to Transform Their State-Law Tort Claims Against Gersonde into Federal Civil Rights Violations Also Fail as a Matter of Law.

Plaintiffs' sole federal cause of action against Gersonde is based on the theory that her engaging in an off-campus sexual relationship with Kelly while she was employed as a part-time teacher's aide constituted a violation of his Fourteenth Amendment due process rights.[3] (Dkt. 32 at ¶44.) Gersonde argues she is entitled to summary judgment on this claim because she was not acting "under color of law" in her sexual relationship with Kelly. (Dkt. 49 at 5-11.) It is far from clear that Gersonde's having a sexual relationship with a 17-year old student, without the use of force or coercion, even if criminal under state law, violated Kelly's substantive due process rights.[4]

---

[3] They also assert state law claims (Counts VII and VIIII) against Gersonde for intentional torts, including battery.
[4] The Seventh Circuit has emphasized that "the scope of substantive due process is very limited," *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)), and cautioned district courts to be wary of expanding the concept given the limited "guideposts" in this area of the law. *See Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019).

But, even assuming that it did, the Court agrees with Gersonde that her conduct was not undertaken under color of law.

To prevail on a section 1983 claim, a plaintiff must prove that he or she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). While Gersonde was an employee of the St. Francis School District, that status does not render all of her acts as actions taken under color of state law. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516-17 (7th Cir. 1990). Indeed, "[A]cts by a state officer are not made under color of [] law unless they are related in some way to the performance of the duties of the state office." *Honaker v. Smith,* 256 F.3d 477, 485 (7th Cir. 2001) (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990)).

Conduct is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir. 2001) (quoting *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997)). A state employee's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Honaker,* 256 F.3d at 485. As the Supreme Court put it, "[i]t is clear that under 'color' of law means under 'pretense' of law. Thus[,] acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). The "color of law" analysis is highly factual; courts commonly look to whether the wrongful acts furthered the state employee's official duties, or whether the actor invoked his authority or deployed indicia of his authority when committing the wrongful acts. *See Wilson v. Price*, 624 F.3d 389, 392-93 (7th Cir. 2010); *Honaker v. Smith*, 256 F.3d 477, 484-86 (7th Cir. 2001); *Latuszkin v. City of Chicago,* 250 F.3d 502, 505-06 (7th Cir. 2001).

The record does not support a finding that Gersonde's off-campus sexual relationship with Kelly was undertaken "under the color of law." Gersonde had very limited authority as a part-time teacher's aide. She was responsible for the supervision of students in hallways, study halls, cafeterias, and the library. (Dkt. 65 at ¶3.) None of the misconduct took place on campus or with any pretense that Gersonde was exercising any authority derived from her low-level position. While Gersonde's employment at the school district occasioned her meeting Kelly, and she would not likely have had a relationship with him if she had not worked at the school, these facts alone do not show that she acted under color of law. There is no evidence that the relationship started

or continued in any way based on a "pretense" of whatever authority she possessed as a part-time teacher's aide. The improper relationship did not further her official duties and there is no evidence that she invoked her authority as a study hall monitor to force or coerce Kelly into their sexual relationship. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (dismissing section 1983 claim against school custodian for lack of action under color of law where complaint did not allege custodian used any authority derived from his position to entice student into inappropriate activity); *Drury v. Volusia*, No. 6:10-cv-1176, 2012 WL 162362 (M.D. Fla. Jan. 19, 2012) (granting summary judgment for defendants and dismissing section 1983 claims when defendants met the plaintiff at work but had consensual sexual contact with her outside of the workplace). In short, the fact that she met Kelly because she monitored his study hall is insufficient to establish that she acted under color of law, absent some additional evidence that her authority or performance of her public duties played some role in causing the subsequent relationship.

In their opposition brief, Plaintiffs cite two Fifth Circuit decisions, *Doe v. Rains County Independent School District*, 66 F.3d 1402 (5th Cir. 1995) and *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994). (Dkt. 70 at 14-15.) In *Taylor Independent School District*, a heavily divided Fifth Circuit, sitting *en banc*, recognized substantive due process claims against a school principal arising out of an inappropriate sexual relationship between a teacher and a 15-year old student. *Taylor Independent School District*, 15 F.3d at 452-54. In a footnote, the majority concluded the teacher had acted under color of law by taking advantage of his position to seduce her, excusing her from work assignments, giving her "A's" for grades, and speaking to other teachers about raising her grades. *Id.* at 452 n.4. He also took her to adjoining rooms at the school for physical contact. *Id.* And he exploited his authority as her basketball coach, engaging in inappropriate behavior after games. *Id.*

In *Rains County Independent School District*, a Fifth Circuit panel reversed a district court's denial of summary judgment for a teacher who was sued under section 1983 for failing to report that another teacher had engaged in inappropriate sexual conduct with a student. The Court held that the teacher's failure to report her colleague's misconduct, while a violation of state law, was *not* undertaken under color of law and thus she was entitled to summary judgment. *Rains*, 66 F.3d at 1416. The Court noted in passing that it would "assume, for purposes of this appeal," that the teacher who engaged directly in the sexual misconduct had acted under color of law, an issue

the appellant conceded in her brief. *Id.* at 1407. It also described the "considerable interaction" between the student and teacher at school, as well as other facts detailing that interaction. *Id.*

Neither of these cases changes this Court's analysis. Both are out-of-circuit precedents that are not binding on this Court. *U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow our decisions, but it owes no more than respectful consideration to the views of other circuits."). Indeed, the *Taylor Independent School District* case suggests that a "gross negligence" standard is appropriate for supervisory liability under section 1983, 15 F.3d at 452-54, a much more expansive standard than the Seventh Circuit (or Supreme Court) has embraced. Regardless, both Fifth Circuit cases involved teachers who repeatedly interacted with students and used their positions as teachers to curry favor with and exploit underage students. There is no such evidence here. Plaintiffs have not shown considerable interaction between Gersonde and Kelly. Other than meeting him while supervising his study hall, there is no suggestion that she exploited her role or used her authority to groom or coerce Kelly into inappropriate conduct.

## CONCLUSION

Plaintiffs' attempt to turn their state-law tort lawsuit into a federal civil rights dispute fails as a matter of law. The record does not include evidence sufficient for a reasonable jury to conclude that the School District Defendants violated Plaintiffs' constitutional rights. Nor does the record support a finding that Gersonde was acting under color of law in entering into her inappropriate sexual relationship with Kelly. Accordingly,

**IT IS HEREBY ORDERED** that:

1. The School District Defendants' motion for summary judgment (Dkt. No. 62) is **GRANTED** in part. Counts II-V of the Amended Complaint are dismissed with prejudice.
2. Defendant Gersonde's motion for partial summary judgment (Dkt. No. 47) is **GRANTED** in part. Count I of the Amended Complaint is dismissed with prejudice.
3. Because the Court has concluded that Plaintiffs have no federal claims, which are the sole basis for its jurisdiction, the Court declines to rule on whether the School District Defendants have state law immunity to Plaintiffs' claims, as well as any issues related to insurance coverage. The Court will relinquish supplemental jurisdiction over any remaining claims. *See* 28 U.S.C. §1367(c)(3); *Lavite v. Dunstan*, 932 F.3d 1020, 1034

(7th Cir. 2019) (noting district courts have discretion to decline to exercise supplemental jurisdiction). If Plaintiffs wish to pursue these issues, they may do so in state court.

4. The motions in limine (Dkt. Nos. 36, 39), the motion for separate trial (Dkt. No. 43), and Community Insurance Corporation's motion for summary judgment (Dkt. No. 54) are **DENIED** as moot.
5. The motion to withdraw as counsel (Dkt. No. 94) is **GRANTED**.

Dated in Milwaukee, Wisconsin this 8th day of July, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge